**In re AQUAMARINE USA, INC., Debtor.**

**No. 6:03 bk–04923–ABB.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Sept. 9, 2005.

See also 319 B.R. 270.

⌖141

Robert B Branson, Orlando, FL, for Debtor.

Deborah A Gibson, The Marks Law Firm, P.A., Orlando, FL, for Walt Koetter.

Ronald W Sikes, Orlando, FL, for Sun-Trust Bank and Thomas L. Moran.

## ORDER DENYING SUNTRUST BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Motion for Relief from the Automatic Stay (Doc. No. 546) ("Motion") filed by SunTrust Bank of Central Florida, N.A. ("SunTrust" or "Lender"). On October 6, 2004 this Court entered an Order (Doc. No. 468) determining that the purchaser of a boat and trailer from the Debtor through a consignment sale has ownership rights in the goods superior to the rights of the original owner/entruster. A trial was held on SunTrust's Motion on July 22.2005 to determine SunTrust's interest in the boat and trailer. After reviewing the pleadings and evidence, and hearing live testimony and argument of SunTrust and various interested parties, being otherwise fully advised in the premises, the Court finds that SunTrust does not hold a lien on the subject boat and trailer. The following Findings of Fact and Conclusions of Law are made:

### FINDINGS OF FACT

Aquamarine USA. Inc., the Debtor herein ("Debtor"), is engaged in the business of selling boats, engines and trailers to third-party purchasers. Approximately ninety percent of the Debtor's business involves the sale of used boats and related equipment on a consignment basis. The remaining portion of the Debtor's business involves the sale of boats and boating equipment acquired by the Debtor by means other than consignment (i.e. trade-

ins or straight purchases of inventory for resale). The Debtor deals with institutional lenders, including SunTrust, on a regular basis in selling boats on consignment. The Debtor communicates with the lien holder to obtain copies of the boat's title, the loan payoff amount, and the per diem payment figure. in conducting a consignment sale where a lien exists.

Thomas L. Moran ("Seller") owned a 1998 Sea Ray vessel. Mercruiser motor and Magic Tilt Trailer (collectively, the "Boat"). The Seller financed the purchase of the Boat with a loan from SunTrust. The parties executed a Fixed Rate Consumer Note. Disclosure and Security Agreement giving SunTrust a lien interest in the Boat.[1] SunTrust recorded the Financing Statement in Orange County. Florida and the lien interest on the Certificate of Title.[2] The Security Agreement prohibited the Seller from transferring the Boat without SunTrust's consent.[3]

The Seller executed a Consignment Agreement[4] with the Debtor on August 11.2002 and authorized delivery of the Boat to the Debtor's place of business, where the Boat was maintained for a consignment sale. The Seller disclosed to the Debtor that the Boat was encumbered by a lien in favor of SunTrust. but he did not immediately disclose the consignment to SunTrust. The Debtor began communicating with SunTrust to obtain loan and title information, after taking possession of the Boat.

The Debtor had sent at least two facsimile transmissions to SunTrust's Bay Hill Office. to the attention of SunTrust employee Nancy Sanchez, the Seller's personal banker, requesting a copy of the title and payoff amount, by August 14, 2002.[5] The second facsimile transmission was addressed to SunTrust employees Nancy Sanchez and "Pat," whose full name is Pat Schaefer.[6] The Seller's loan account is referenced and SunTrust is identified as the "lien holder." in each facsimile from the Debtor.[7]

The second facsimile contains a handwritten note reflecting the Debtor had been advised that Nancy Sanchez was on maternity leave.[8] Pat Schaefer contacted the Seller and received authorization to release the payoff and title information to the Debtor. Pat Schaefer provided the Debtor with the loan payoff amount on August 20, 2002.[9] The Debtor sent another facsimile to SunTrust, dated on September 11, 2002, requesting the same information again, when the Debtor did not receive a copy of the title.[10]

Another SunTrust employee, Tobias Daniel, contacted the Seller by telephone and obtained the Seller's authorization to release the title information to the Debtor, in response to the third facsimile. Tobias Daniel testified that he could not remember anything else about the conversation, nor did he know if he created any documents memorializing his conversation with Seller. Mr. Daniel forwarded a copy of

1. Lender's Exhibit 1.

2. Lender's Exhibits 2 and 3.

3. Lender's Exhibit 1.

4. Koetter's Exhibit 5.

5. Koetter's Exhibits 12 and 13.

6. Koetter's Exhibit 13.

7. Koetter's Exhibits 12 and 13.

8. Koetter's Exhibit 13.

9. Koetter's Exhibit 14.

10. Koetter's Exhibit 16.

the title to the Debtor on September 12.2002.[11]

The Debtor, in the ordinary course of its business, entered into an agreement with Walter Koetter ("Koetter" or "Buyer") for Koetter to purchase the Boat for approximately $44,794.00. after receiving the payoff figure and a copy of the title.[12] Koetter paid the full amount of the purchase price to the Debtor with a cashier's check on October 6, 2002.[13] The Debtor delivered the Boat to Koetter in November 2002 and Koetter took possession of the Boat. The Debtor and Koetter intended that ownership of the Boat would pass to Koetter upon receipt of the Boat by Koetter. The Debtor advised Koetter that they did not have all of the paperwork necessary to transfer title to the Boat. but that the Debtor expected to obtain the paperwork within a few weeks and the delay in delivery was also due to required repairs to the Boat. The Debtor did not disclose to Koetter that a lien in favor of SunTrust appeared on the title to the Boat or that the Debtor had obtained the Boat through a consignment by the Seller.

The Debtor failed to pay the Seller or SunTrust the amount set forth in the Consignment Agreement. The Debtor filed a Chapter 11 proceeding on May 1, 2003. A debt of approximately $24,000.00 is owed to SunTrust on the Seller's loan. The Seller continued to make regular monthly payments to SunTrust and maintained insurance coverage for the Boat. The Seller did not notify SunTrust of his transfer of possession of the Boat to the Debtor until after the Debtor sold the Boat to Koetter. Title to the Boat remains in the name of the Seller and reflects the SunTrust lien.

Koetter retains possession of the Boat, but cannot use it because title cannot be transferred with the State of Florida.

SunTrust had notice of and acquiesced to the consignment sale of the Boat. SunTrust is regularly involved with boat consignment sales in its normal course of business and SunTrust has dealt directly with the Debtor in regard to payoffs and title requests on several occasions. SunTrust received loan payoff and title document requests from the Debtor and provided the requested information. The requests were in the normal course of events in a consignment sale. SunTrust did not take affirmative action to assert or protect its security interest in the Boat. The communications between the Debtor, SunTrust, and the Seller put SunTrust on notice that the Boat was consigned to the Debtor and SunTrust's actions evidence its acquiescence to the consignment sale of its collateral. As a result. SunTrust does not have a lien on the Boat.

### CONCLUSIONS OF LAW

■ Resolution of the issue whether Koetter received title to the Boat free of any lien or interest of SunTrust turns on the application of the Florida Uniform Commercial Code,[14] and is determined by state law. *In re Grubbs Constr. Co.,* 306 B.R. 372, 375 (Bankr.M.D.Fla.2004). The Florida Uniform Commercial Code consignment and entrustment statutes are controlling.

■ Consignment sales are governed by §§ 672.326, *et seq.,* of the Florida Uni-

---

11. Koetter's Exhibit 15.

12. See Koetter's Exhibit 18.

13. See Koetter's Exhibit 19.

14. The Florida Uniform Commercial Code is found at Chapters 670 through 680 of the Florida Statutes. Several of these Chapters adopt and/or correspond to articles and sections of the Uniform Commercial Code.

form Commercial Code. The Seller's transfer of the Boat to the Debtor and the subsequent sale to Koetter constitutes a consignment sale pursuant to § 672.326 of the Florida Uniform Commercial Code. In a consignment sale, title to goods passes to the buyer at the time and place at which the seller completes performance of physical delivery of the goods. Specifically:

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes her or his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place: and in particular and despite any reservation of a security interest by the bill of lading.

FLA. STAT ANN. § 672.401(2) (West 2004). Based on the clear language of this statute, title to the Boat passed to Koetter upon the delivery of the Boat to Koetter by the Debtor, even though the Debtor did not deliver the title documents contemporaneously and promised to deliver the title documents later.

■ Section § 672.403 of the Florida Uniform Commercial Code addresses the entrustment of goods and provides, "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business." FLA. STAT. ANN. § 672.403(2) (West 2004). "Entrusting" is defined as: "any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." FLA. STAT. ANN. § 672.403(3) (West 2004). In executing the Consignment Agreement and delivering the Boat to the Debtor, the Seller entrusted the Boat to the Debtor.[15] The Debtor is a commercial merchant dealing in consignment sales of used boats and equipment.[16] The Debtor had the power to sell the Boat to a buyer in the ordinary course.

■ SunTrust had notice of the consignment sale based on the communications between the Seller, Debtor and SunTrust. Sections 671.201(25), (26). and (27) of the Florida Uniform Commercial Code set forth the definition of notice and when notification occurs. Subsection (25) sets forth that a person has "notice" of a fact when:

(a) He or she has actual knowledge of it: or

(b) He or she has received a notice or notification of it: or

(c) From all the facts and circumstances known to the person at the time in question he or she has reason to know that it exists.

FLA. STAT. ANN. § 671.201(25) (West 2004). SunTrust claims it was not advised of the consignment. However, the evidence reflects that there were at least seven separate SunTrust communications, via facsimile and telephone, regarding payoff

---

**15.** See Order entered on October 6, 2004 (Doc. No. 468) at pp. 3–4.

**16.** Under Florida's Uniform Commercial Code, a "merchant" is defined as: a person who deals in goods of the kind or otherwise by occupation holds himself or herself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his or her employment of an agent or broker or other intermediary who by occupation holds himself or herself out as having such knowledge or skill. FLA. STAT ANN. § 672.104(1) (West 2004).

and title information for the Boat. These communications took place with employees of SunTrust who provided payoff and title information for vessels in the regular course of their duties. The communications identified SunTrust as a lienholder. SunTrust certainly had reason to know that the Boat had been consigned, based on all of the facts and circumstances. Acquiescence in a consignment relationship by the lien holder constitutes entrustment pursuant to § 672.403 of the Florida Uniform Commercial Code. *Carlsen v. Rivera*, 382 So.2d 825, 826 (Fla.Dist.Ct.App. 4th 1980). SunTrust had notice of the consignment of the Boat pursuant to § 671.201(25)(c) and by providing information to the Debtor and taking no affirmative action to protect its collateral. acquiesced in the entrustment of the Boat.

■■■ Chapter 679 of the Florida Uniform Commercial Code addresses the rights of lien holders in entrusted goods:[17]

"... a buyer in ordinary course of business, other than a person buying farm products from a person engaged in farming operations, takes free and clear of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence."

FLA. STAT. ANN. § 679.320(1) (West 2004). The Florida Uniform Commercial Code defines a "buyer in ordinary course of business" as:

a person who buys goods in good faith without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person. other than a pawnbroker. in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices.

FLA. STAT. ANN. § 671.201(9) (West 2004). Only a buyer who takes possession of the goods or has a right to recover the goods from the seller pursuant to Chapter 672 may be a buyer in the ordinary course of business. *Id.* A buyer in the ordinary course of business takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence. FLA. STAT. ANN. § 679.320(1) (West 2004).

■■■ Koetter received title to the Boat free and clear of any lien or interest SunTrust may have had in the Boat. The Debtor, who is a seller of consigned vessels and is a merchant as defined by the Florida Uniform Commercial Code. sold the Boat to Koetter through the Debtor's usual and customary consignment sale practices. Koetter purchased the Boat in good faith, for value, from the Debtor without knowledge of SunTrust's lien interest in the Boat. Koetter qualifies as a buyer in the ordinary course of the Debtor's business as defined by § 671.201(9) of the Florida Uniform Commercial Code. Neither the delay in delivery of the Boat by the Debtor to Koetter nor the Debtor's failure to deliver title documents put Koetter on notice the Boat was on consignment or that SunTrust held a lien interest in the Boat. A prudent purchaser may have asked more questions than Koetter did regarding the delivery delay and the status of the title documents. However, Koetter's failure to ask such questions does not put Koetter in a position of having notice.

---

**17.** Section 672.403(3) provides that the "rights of other purchasers of goods and of lien creditors are governed by the chapters on secured transactions (chapter 679) and documents of title (chapter 677)." FLA. STAT. ANN. § 672.403(4) (West 2004).

SunTrust had notice of the consignment of the Boat and acquiesced to the consignment sale of the Boat. SunTrust's acquiescence constitutes an entrusting of the Boat to the Debtor within the meaning of § 672.403(2) of the Florida Uniform Commercial Code. Koetter received the Boat free and clear of SunTrust's security interest pursuant to § 679.320(1) of the Florida Uniform Commercial Code. Therefore, SunTrust's Motion seeking relief from the automatic stay is due to be denied.

It is therefore.

**ORDERED, ADJUDGED and DECREED** that SunTrust's Motion for Relief from Stay is hereby **DENIED:** and it is

**ORDERED, ADJUDGED AND DECREED** that Walter Koetter is to receive clear title to the Boat, free of any lien interest claimed by SunTrust: and it is

**ORDERED, ADJUDGED AND DECREED** that SunTrust shall forthwith execute and deliver all necessary documents to effectuate the transfer of clear title to the Boat to Walter Koetter.